

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,                :
ex rel., PAUL E. ATKINSON,               :        CIVIL ACTION
   Plaintiff,                          :
                                       :        NO. 94-7316
     v.                            :
                                       :
PENNSYLVANIA SHIPBUILDING CO. and        :
FIRST FIDELITY BANK, N.A.,
   Defendants.

**FILED**

DEC - 3 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## Memorandum and Order

YOHN, J.                                    November 30, 2007

At the conclusion of more than thirteen years of litigation, defendants Pennsylvania

Shipbuilding Co. ("Penn Ship") and First Fidelity Bank ("Fidelity") move to recover attorney

fees and expenses under the False Claims Act ("FCA"), 31 U.S.C. § 3730(d)(4), for their

successful defense of this *qui tam* action.[1]  For the reasons discussed herein, their requests will be

denied.

----

[1] Penn Ship requests attorneys' fees and expenses incurred from August 30, 2002, the
date this court dismissed all but a portion of a single conspiracy claim in relator's third amended
complaint, to July 28, 2004, the date this court granted summary judgment in favor of defendants
on that conspiracy claim.  Fidelity requests attorneys' fees and expenses incurred since
November 1998, when it was served with the first amended complaint.

1

I.   **History and Procedure**

On previous occasions, the court has discussed the factual underpinnings and procedural development of relator Paul Atkinson's claims,[2] so I will presently discuss only those portions relevant to the current motion. In 1984, the United States Navy solicited bids for the construction of oil tanker ships. Penn Ship sought this contract (the "Oiler Contract") and ultimately submitted the lowest bid. Before the Oiler Contract was awarded to Penn Ship, however, the Navy requested that Penn Ship secure the Navy against any reprocurement costs it would incur should Penn Ship default on the contract. Penn Ship proposed creating a trust, which would provide financial security to the Navy as the beneficiary.

Penn Ship then drafted a trust indenture for which Fidelity served as trustee. The trust indenture was finalized and signed by all parties on March 26, 1985. The trust indenture transferred second lien security interests in numerous properties, including Drydock No. 4, to trustee Fidelity. These liens secured the Navy for up to $20 million in reprocurement costs in the event that Penn Ship defaulted. The Navy's security interests, however, were subordinated to $18 million in existing first liens and mortgages, and Penn Ship had the right to substitute additional first liens up to $24 million. Under the trust indenture, Penn Ship was also required to "promptly file all mortgages, financing statements and other documents necessary to perfect the Trustee's secured status under the Security Instruments." Fidelity was paid an annual fee of

---

[2] *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, No. 94-7316, 2000 U.S. Dist. LEXIS 12081, **6-24 (E.D. Pa. Aug. 24, 2000) ("*Atkinson I*"); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351, 357-63 (E.D. Pa. 2002) ("*Atkinson II*"); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, No. 94-7316, 2004 U.S. Dist. LEXIS 14532, **2-11 (E.D. Pa. July 28, 2004) ("*Atkinson III*").

2

$2500 for its services as trustee, which involved holding the security instrument documents until directed to act by the Navy.

The Navy awarded the Oiler Contract to Penn Ship on May 6, 1985, and the trust indenture became effective immediately. Penn Ship never recorded the documents required to perfect Fidelity's security interest, subsequently experienced financial difficulty, and was unable to complete its responsibilities under the Oiler Contract. After two unsuccessful attempts to modify the financing and timing of Penn Ship's construction of the oil tankers, the Navy and Penn Ship decided on August 24, 1989 to end their contract, terminate the trust indenture, and transfer the two existing oil tankers to another shipyard. They also agreed to modify their contract to establish Penn Ship's (1) fixed liability for reprocurement costs of $19 million, which was satisfied by the transfer of Drydock No. 4 to the Navy; and (2) contingent liability of up to $5.09 million. The contingent liability would have matured if Penn Ship was able to generate cash flow by liquidating its assets over a thirteen-month period, but this never occurred. On January 12, 1992, Penn Ship and the Navy entered into a final modification fully releasing Penn Ship from all responsibility and liability under the Oiler Contract.

Atkinson and co-relator Eugene Schorsch filed the current *qui tam* action in 1994, naming Penn Ship and Fidelity as defendants. The Department of Justice investigated relators' claims for two and a half years, but it opted not to intervene in the action on June 6, 1997 and again on September 19, 1997. (Docket Nos. 30 & 36.) On August 24, 2000, after relators obtained counsel, twice amended their complaint, and added Sun Ship, Inc. ("Sun Ship") as a defendant,[3]

---

[3] Relators filed an amended complaint on June 5, 1997 and a second amended complaint on January 4, 1999.

3

the court granted Fidelity and Sun Ship's motions to dismiss and granted in part and denied in part Penn Ship's motion to dismiss for failure to state a claim upon which relief may be granted. *Atkinson I*, 2000 U.S. Dist. LEXIS 12081, at *6. The court dismissed the counts without prejudice, granting relators leave to amend their complaint. *Id.* On October 16, 2000, Atkinson, without co-relator Schorsch, filed his third amended complaint against only Penn Ship and Fidelity, alleging twelve claims covering substantially the same facts as contained in the second amended complaint, although in "more robust" detail, "presumably in an effort to cure the deficiencies that led to the dismissal of significant portions of his second amended complaint." *Atkinson II*, 255 F. Supp. 2d at 361.

On August 30, 2002, the court granted defendants' motions to dismiss counts two through eleven of relator's third amended complaint under Rule 12(b)(1) pursuant to 31 U.S.C. § 3730(e)(4), which stripped the court of jurisdiction because the information underlying Atkinson's FCA claims was publicly available and Atkinson was not an original source of the information.[4] *Id.* at 362. With respect to the first count, which alleged conspiracy, the court concluded that Atkinson was an original source of the nonrecording of the Navy's security instruments. *Id.* Specifically, Atkinson, acting through his agent Schorsch, discovered Delaware County public records showing that defendant Penn Ship had not recorded the trust indenture. *Id.* at 374-82. Thus, § 3730(e)(4)'s public disclosure bar did not apply, but only to the extent the count was based on Penn Ship's nonrecording and Fidelity's failure to ensure such recordation. *Id.* at 362. The court, however, limited the conspiracy claim by granting defendants' motions to

---

[4] The court did not address subject matter jurisdiction when it dismissed the second amended complaint because of unresolved jurisdictional issues then being considered by the United States Supreme Court and because the parties had not fully briefed those issues.

4

dismiss under Rule 12(b)(6) to the extent the conspiracy claim was based on reverse false claims not cognizable under the FCA and to the extent that it was barred by the six-year statute of limitations for actions prior to December 4, 1988. *Id.*

The parties proceeded to discovery regarding the facts surrounding the surviving conspiracy claim.  Discovery lasted from October 4, 2002 until approximately November 1, 2003, and the court compelled additional discovery from Fidelity on December 3, 2003.  Discovery entailed document requests totaling almost 50,000 pages and a series of twenty-four depositions.

On July 28, 2004, this court granted summary judgment for defendants and against relator for the sole remaining claim of conspiracy.  The court granted summary judgment because it was unable to find any evidence in the record from which a reasonable jury could conclude that Penn Ship and Fidelity formed an agreement to defraud, a prerequisite to a conspiracy.  Because Atkinson had turned up no additional evidence during discovery, the court noted that all of relator's summary judgment assertions were "speculation and contingency." *Id.* at *45.  Overall the court held:

> Despite his laundry list of the reasons Penn Ship might, conceivably, have wished to avoid its obligation to record, he has failed to offer "more than a whiff of the alleged conspirators' assent." . . .  With respect to Fidelity—whose alleged role in the conspiracy was its failure to ensure recordation—plaintiff has provided this court with no evidence that Fidelity played any role whatsoever in the nonrecording, nor that Fidelity had any incentive to pursue such a goal.

*Id.* at *49; *see also id.* at **30, 46.  After the court granted summary judgment for defendants, Atkinson unsuccessfully moved for reconsideration. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, No. 94-7316, 2004 U.S. Dist. LEXIS 19044 (E.D. Pa. Sept. 16, 2004)

("*Atkinson IV*"). He then appealed to the summary judgment in *Atkinson III*, the dismissal in

*Atkinson II*, and the dismissal in *Atkinson I*, to the Third Circuit.  Defendants timely moved to

recoup their attorneys' fees and expenses under § 3730(d)(4), but this court dismissed the

motions without prejudice, pending the resolution of Atkinson's appeal.

       On January 12, 2007, reviewing the dismissals de novo, the Third Circuit affirmed the

court's dismissals of counts two to eleven of the third amended complaint for lack of jurisdiction

in *Atkinson II* and held that this court should have dismissed count one for lack of jurisdiction as

well because relator was not an original source of the information underlying the conspiracy

claim.  *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007)

(*Atkinson V*).  The Third Circuit, considering the issue one of first impression, *see id.* at 521

(noting that "[w]e have yet to specifically address for purposes of the original source analysis . . .

the impact of relator's reliance upon information in the public domain that is not a

§ 3730(e)(4)(A) public disclosure"), disagreed with this court on whether Atkinson's reliance on

the nonrecording of the Navy's security instrument in the Delaware County records is relevant to

the original source inquiry under § 3730(e)(4)(B).  The Third Circuit concluded that where "the

relator's knowledge of the element is based, in whole or in part, on information available in the

public domain that is not a § 3730(e)(4)(A) public disclosure, it is the nature and extent of

reliance upon that information that determines whether the relator is an original source." *Id.* at

522.  The court noted that "Atkinson's research did not involve 'obscure' public records, nor

were the public records only a small part of the information ultimately uncovered by his

investigation"; in fact, "it was *only* from review of information in the public domain that

Atkinson learned of the failure to record." *Id.* at 523.  The Third Circuit held that "Atkinson's

FCA action must be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) for want of

jurisdiction," rendering review of this court's grant of summary judgment unnecessary and

outside of its mandate. *Id.* at 531. Defendants subsequently filed the present motions for their

attorneys' fees and expenses.

## II.     Discussion

Defendants assert that they are entitled to their attorneys' fees and expenses under

§ 3730(d)(4).  Section 3730(d)(4) grants a district court judge discretion to award attorney fees

and expenses to a prevailing defendant in a *qui tam* action under certain circumstances.  It states:

> If the Government does not proceed with the action and the person
> bringing the action conducts the action, the court may award to the defendant its
> reasonable attorneys' fees and expenses if the defendant prevails in the action and
> the court finds that the claim of the person bringing the action was clearly
> frivolous, clearly vexatious, or brought primarily for purposes of harassment.

To award attorney fees and expenses to defendants in this case, therefore, the court must

find that (1) the government did not proceed in the action; (2) defendants prevailed in the action;

(3) the claim was clearly frivolous, clearly vexatious, or primarily for the purposes of

harassment; and (4) the requested fees are reasonable.  Even for claims that meet all four

requirements, however, the court awards attorney fees and expenses only at its discretion. *See id.*

(codifying that "the court *may* award . . . attorneys' fees and expenses" (emphasis added)).

Relator contends that this court does not have jurisdiction to grant the motion for attorney

fees and expenses after the Third Circuit dismissed the complaint for lack of subject matter

jurisdiction; that defendants did not prevail in the action under the second § 3730(d)(4)

requirement; and that the court should not find that the claim was clearly frivolous, clearly

vexatious, or brought primarily for the purposes of harassment under the third § 3730(d)(4)

requirement. As analyzed more fully below, the court has jurisdiction to award attorney fees and

expenses under § 3730(d)(4), and defendants were prevailing parties. The court, however,

cannot conclude that Atkinson's claims were clearly frivolous, clearly vexatious, or primarily for

the purposes of harassment, so I will not award the requested attorneys' fees and expenses in this

case.

A.     **Effect of dismissal under § 3730(e)(4)**

Resolution of the court's jurisdiction and defendant's status as a prevailing party turns on

the effect of dismissal under § 3730(e)(4). The Third Circuit dismissed the entirety of the second

and third complaints for lack of subject matter jurisdiction under § 3730(e)(4). *Atkinson V*, 473

F.3d at 530-31. Section 3730(e)(4) removes a court's jurisdiction over claims for which the

relator relies on publicly disclosed information and is not an original source of the information.[5]

The Third Circuit's holding is the operative law of the case, affirming this court's dismissal of

counts two to eleven of the third amended complaint and supplanting this court's summary

judgment ruling on the first count of the third amended complaint.

_____

[5] Section 3730(e)(4) states:

> (A) No court shall have jurisdiction over an action under
> this section based upon the public disclosure of allegations or
> transactions in a criminal, civil, or administrative hearing, in a
> congressional, administrative, or Government [General]
> Accounting Office report, hearing, audit, or investigation, or from
> the news media, unless the action is brought by the Attorney
> General or the person bringing the action is an original source of
> the information.
> (B) For purposes of this paragraph, "original source" means
> an individual who has direct and independent knowledge of the
> information on which the allegations are based and has voluntarily
> provided the information to the Government before filing an action
> under this section which is based on the information.

A dismissal for lack of jurisdiction under § 3730(e)(4) is both jurisdictional and substantive. *See Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1406 (2007); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951 (1997). The provision is jurisdictional because it strips the court's authority to hear a claim under the FCA when the relator fails to qualify under the original source provision. *Rockwell*, 127 S. Ct. at 1406 (The issue is "whether a clear and explicit withdrawal of jurisdiction withdraws jurisdiction. It undoubtedly does so."). Dismissals under § 3730(e)(4), however, also adjudicate the substantive rights of the parties. In *Hughes*, the Supreme Court held that § 3730(e)(4) "speaks not just to the power of a particular court but to the substantive rights of the parties as well." 520 U.S. at 951.[6] In that case, the Court weighed whether § 3730(e)(4) was subject to the presumption against retroactivity, despite its jurisdictional label. It noted that:

> Statutes merely addressing which court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties. . . . Such statutes affect only where a suit may be brought, not whether it may be brought at all. The 1986 amendment [which added § 3730(e)(4)], however, does not merely allocate jurisdiction among fora. Rather, it creates jurisdiction where none previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well.

---

[6] *Atkinson V*, 473 F.3d at 515, cited by realtor, is not to the contrary. In *Atkinson V*, the Third Circuit found that the jurisdictional facts under § 3730(e)(4) and substantive facts for purposes of the underlying false claim under 3729(a)(3) were not intertwined for the purposes of establishing the level of scrutiny under Rule 12(b)(1). Atkinson argues that this ruling compels the conclusion that dismissal under § 3730(e)(4) does not regulate the substance of the case for the prevailing party analysis. This is incorrect. The Third Circuit specifically limited its analysis in *Atkinson V* to the Rule 12(b)(1) decision at hand by noting that its holding did not address the distinct issue of whether a dismissal under § 3730(e)(4) otherwise regulated the parties' substantive rights as per *Hughes*. *See* 473 F.3d at 515 n.13.

*Id.* at 951 (internal citations omitted).  Thus, by holding that § 3730(e)(4)'s public disclosure jurisdictional bar applied because Atkinson was not the original source of the conspiracy claim, the Third Circuit stripped this court of authority to adjudicate the merits of Atkinson's *qui tam* action and also resolved the substantive rights of the parties.

**B.     Jurisdiction to award attorney fees and expenses under § 3730(d)(4) after dismissal under § 3730(e)(4)**

The court retains jurisdiction over § 3730(d)(4) claims for attorney fees and expenses after dismissal for lack of jurisdiction under § 3730(e)(4).  This finding is consistent with congressional intent and the most persuasive precedent from other courts of appeals.  Exercising jurisdiction over the collateral issue of attorney fees is similarly consistent with the Third Circuit's holding regarding the issues of attorney fees under Rule 11 of the Federal Rules of Civil Procedure and of the inherent power of the courts to sanction parties before it.

Congressional intent supports jurisdiction to award attorney fees under § 3730(d)(4) for claims in an action dismissed under § 3730(e)(4).[7]  By enacting § 3730(d)(4), Congress intended to dissuade litigation that is frivolous.  *See* 99 Sen. Rep. 345, 1986 U.S.C.C.A.N. 5266, 196 WL 31937 (July 28, 1986) ("The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes.").  Section 3730(e)(4) was similarly intended to strike a balance between the "twin goals of rejecting suits which the government is capable of

---

[7] The court notes that the first point of reference for any statutory analysis is the plain meaning of the text; however, the parties have not addressed any plain meaning arguments and the interplay of the language of §§ 3730(d)(4) and 3730(e)(4) does not reveal a plain meaning. Thus, the court will proceed to analyze other sources to guide its interpretation.

pursuing itself, while promoting those which the government is not equipped to bring on its own." *Atkinson V*, 473 F.3d at 519 n.20 (internal quotation marks and citation omitted). As part of this balancing act, § 3730(e)(4) removes jurisdiction over one type of case that Congress deemed unnecessary—suits brought by persons who do not have first-hand knowledge of fraudulent misconduct that could instead be brought by the government based on publicly available information. Eliminating jurisdiction to award attorney fees and expenses in such cases would have the illogical consequence of disallowing fees in cases specifically identified by Congress as undesirable.

Although there is no controlling precedent, this conclusion is consistent with the most persuasive holdings from other jurisdictions. In *United States ex rel. Grynberg v. Praxair, Inc.*, after the district court dismissed the case for lack of jurisdiction under § 3730(e)(4) because the relator was not an original source of the information underlying the claim, the Tenth Circuit concluded that the district court retained jurisdiction over the defendant's § 3730(d)(4) motion for attorney fees and expenses because "[c]ourts that lack jurisdiction with respect to one kind of decision may have it with respect to another." 389 F.3d 1038, 1051-54, 1056 (10th Cir. 2004) (citing *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923 (7th Cir. 2000) (reaching the same conclusion under § 1988(b))).[8] The Tenth Circuit held that the defendant "has expended significant funds . . . [as a] result of a frivolous lawsuit, an alleged injustice which may be redressed by an award of attorney fees as contemplated by the statute. The district court is not

---

[8] Because Congress intended the standard under § 3730(d)(4) to reflect the standard under § 1988, the court will rely on cases analyzing § 1988 where relevant. *See generally* 99 Sen. Rep. 345 (discussing that "[t]his standard [in § 3730(d)(4)] reflects that which is found in section 1988 of the Civil Rights Attorneys Fees Awards Act of 1976").

being asked to continue to consider the merits of the underlying *qui tam* case." 389 F.3d at 1057.

I find the Tenth Circuit's analysis in *United States ex rel. Grynberg* persuasive because it

recognizes the distinction between adjudicating the merits of the FCA claim and sanctioning the

pursuit of unfounded lawsuits through the statutory interplay between § 3730(d)(4) and

§ 3730(e)(4).

A finding that this court retains jurisdiction is consistent with Supreme Court and Third

Circuit precedent allowing district courts to exercise authority over collateral issues, such as Rule

11 sanctions, after dismissal for lack of subject matter jurisdiction.[9] *See Willy v. Coastal Corp.*,

503 U.S. 131, 138 (1992) ("[I]t is well established that a federal court may consider collateral

issues after an action is no longer pending. . . . Such an order implicates no constitutional

concern because it does not signify a district court's assessment of the legal merits of the

complaint."); *Schering Corp. v. Vitarine Pharm. Inc.* 889 F.2d 490, 495 (3d Cir. 1989) (holding

that "a district court . . . retains the power to adjudicate collateral matters such as applications for

counsel fees, . . . and motion for sanctions under Rule 11") (citing *Szabo Food Servs. v. Canteen*

---

[9] Despite Atkinson's opposition to reliance on Rule 11 cases because they are
"completely distinct from the authority granted the court under fee-shifting statutes," (Pl.'s Sur-
Reply Opp. Fees 17), these cases are persuasive in interpreting the policy underlying
§ 3730(d)(4). *See* 99 Sen. Rep. 345 ("The Committee encourages courts to strictly apply this
provision in frivolous or harassment suits as well as any applicable sanctions available under the
Federal Rules of Civil Procedure."). Atkinson notes that fee-shifting statutes such as
§ 3730(d)(4) are tied to the merits of the case and are levied against parties, while Rule 11 and
similar sanctions regulate lawyer behavior and are independent from the merits. These
distinctions are inapposite for the court's present jurisdictional consideration because
§ 3730(d)(4) is inherently collateral to the merits of the underlying FCA false-filing claim. *See
United States ex rel. Grynberg*, 389 F.3d at 1057 ("The district court is not being asked to
continue to consider the merits of the underlying *qui tam* case. Rather, it must determine
whether Grynberg's lawsuit was or became clearly frivolous or vexatious."). Furthermore, as
noted above, the jurisdictional provision under § 3730(e)(4), like Rule 11, is intended to dissuade
litigation that is frivolous. *See* 99 Sen. Rep. 345.

*Corp.*, 823 F.2d 1073, 1077-78 (7th Cir. 1987), which consistent with the Seventh Circuit's

precedent in *Citizens for a Better Environment*, held that "the use of 'lack of jurisdiction' to

describe the things it may not do does not mean that the court is out of business").[10]  Considering

as a whole the Tenth Circuit's persuasive analysis in *United States ex rel. Grynberg* and this

parallel precedent under Rule 11, the court retains jurisdiction to award attorney fees and

expenses under § 3730(d)(4).[11]

### C.      Prevailing party status after dismissal under § 3730(e)(4)

By prevailing under § 3730(e)(4), defendants "prevailed" in this action for the purposes

of § 3730(d)(4).  To award attorney fees and expenses to defendants under § 3730(d)(4), the

court must conclude that defendants prevailed in this action.  Atkinson argues that the Third

Circuit's decision dismissing the case on jurisdictional grounds under § 3730(e)(4) precluded

---

[10] The Third Circuit's ruling in *Ray v. Eyster*, 132 F.3d 152, 156 (3d Cir. 1997) ("*Bone Screw Products*"), although cited by relator, is consistent with this conclusion.  In *Bone Screw Products*, the Third Circuit held that "where jurisdiction is found to be lacking, there can be no adjudication of the merits of the case." *Id.* at 157.  *Bone Screw Products*, however, was concerned with the authority of federal courts to issue dispositive rulings, such as dismissal with prejudice for failure to comply with discovery orders, after a finding that the court lacked jurisdiction over claims better adjudicated in state court. *Id.* at 155.  This case does not concern similar federalism limitations, and this court deals not with its authority to consider the underlying FCA conspiracy claim under § 3729(a)(3), but its authority over the collateral matter of attorney fees and expenses under the separate provision of § 3730(d)(4).  As the Third Circuit in *Bone Screw Products* noted, "[a] court's power to determine the merits of a case is distinct from its power to exercise its authority over a person appearing before the court." *Id.* at 156.

[11] Courts of appeals in other jurisdictions have reached opposite conclusions in the context of § 1988 fee requests.  *See Branson v. Nott*, 62 F.3d 287, 292-93 (9th Cir. 1995) (holding that § 1988(b) does not by its terms convey jurisdiction on federal courts independently from the cross-referenced substantive provisions); *W.G. ex rel. D.C. v. Senatore*, 18 F.3d 60, 64 (2d Cir. 1994) (same); *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990) (same).  I find the Tenth Circuit in *United States ex rel. Grynberg* and the Seventh Circuit in *Citizens for a Better Environment*, which unlike the other courts of appeals relied heavily on *Willy*, most persuasive regarding the present application of § 3730(d)(4) for the reasons discussed above.

defendants from claiming prevailing party status because the decision was not a ruling on the

factual merits of his underlying FCA § 3729(a)(3) allegations. He asserts that because it was

jurisdictional, the ruling of the court of appeals was without prejudice and defendants do not

"have a judgment . . . that would prevent Relator/Atkinson from filing another FCA action

against any or all of them or on which a court could summarily dismiss another action." (Pl.'s

Sur-Reply Opp'n Fees 28.) Defendants counter that, because of the Third Circuit's dismissal for

lack of subject matter jurisdiction, they are substantively prevailing parties for the purpose of

§ 3730(d)(4). Defendants' argument is correct.

Typically, dismissal for lack of subject matter jurisdiction is without prejudice. *See Bone

Screw Prods.*, 132 F.3d at 155; *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A

dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim.

Ordinarily, such a dismissal is 'without prejudice.'"). Dismissals are typically without prejudice

because the frequently used jurisdictional statutes merely regulate jurisdiction among fora, *see

Hughes*, 520 U.S. at 951, so the plaintiffs are free to pursue the underlying factual claims in state

court. The cases Atkinson cites, *Hygienics Direct Co. v. Medline Industries, Inc.*, 33 Fed. Appx.

621 (2002) (unpublished), *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172 (3d Cir. 1999), and

*Sellers v. Local 1598*, 614 F. Supp. 141 (E.D. Pa. 1985), *aff'd* 810 F.2d 1164 (3d Cir. 1987),

stand for nothing more than the proposition that where the plaintiff is pursuing or is free to

pursue relief in state court, the defendant has not yet prevailed on any issue of substance. For

example, in *Sellers*, which was relied on most extensively by Atkinson, the district court

concluded for a § 1988 claim that "when a complaint is dismissed for lack of jurisdiction," the

defendant "has not 'prevailed' over the plaintiff on any issue central to the merits of the

litigation." *Id.* at 144. The *Sellers* court, however, dismissed only the pendent state labor law claims for lack of jurisdiction and did so without prejudice. *See Sellers v. Local 1598*, 600 F. Supp. 1205, 1212-13 (E.D. Pa. 1984). Those claims then proceeded in state-based litigation. *See id.* at 1213 (noting that defendants faced "duplicate actions" in another judicial forum); *see also, e.g., Hygienics*, 33 Fed. Appx. at 625 (noting that the district court "did not reach the merits of the case, which is currently proceeding in state court"); *Figueroa*, 188 F.3d at 182 (remanding to the district court to dismiss the supplemental claims without prejudice because, despite plaintiff's "inability to later pursue these claims in federal court," the claims could be brought anew in territorial court).

Atkinson's argument hinges too much on the *factual* merits of his false claims case; the proper analysis is whether § 3730(e)(4) materially alters the legal relationship between the parties. A dismissal under the public disclosure provision in § 3730(e)(4) does not fall into the "typical" paradigm because it is functionally *with prejudice*, as the relator cannot bring the same claim on the same facts again in any court. *See United States ex rel. Grynberg*, 389 F.3d at 1057; *see also Hughes*, 520 U.S. at 951. The public disclosure jurisdictional bar grants defendants the type of relief traditionally associated with the award of attorney fees and expenses in § 1988 cases. The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Tx. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989); *see also, e.g., Buckhannon Bd. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 606 (2001) (finding fees inappropriate where "there is no judicially sanctioned change in the legal relationship of the parties"); *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (finding a plaintiff had prevailed where the judgment "materially alters the legal relationship between the parties by

modifying the defendant's behavior in a way that directly benefits the plaintiffs" and that plaintiff "becomes entitled to enforce"). In *United States ex rel. Grynberg*, the Tenth Circuit noted this precedent and concluded that dismissal under § 3730(e)(4) "materially changed the legal relationship between Grynberg and Praxair." 389 F.3d at 1057; *accord Citizens for a Better Env't*, 230 F.3d at 929 ("[D]efendant prevails by securing a declaration that it need not pay damages or alter its behavior. . . . A declaration that the plaintiff and others like it are not even entitled to sue accomplishes the same end, and more.").

In this case, dismissal under § 3730(e)(4) undisputedly altered the legal relationship of the parties. *Cf. Miles v. California*, 320 F.3d 986, 989 (9th Cir. 2003) (concluding that even dismissal without prejudice allowing state court claims to proceed but eliminating the right to proceed on a federal ADA claim in federal court is a material alteration of the legal relationship). Unlike *Hygenics*, *Figueroa*, and *Sellers*, defendants prevailed over relator regarding an issue that is substantive and fundamental to the case—whether Atkinson qualified as an original source of information—and Atkinson thus cannot proceed on this FCA claim in any court. Because the Third Circuit's dismissal of the action under § 3730(e)(4)'s public disclosure bar substantively barred Atkinson's claims, it altered the legal relationship of the parties, and defendants have prevailed for purposes of § 3730(d)(4).

**D.     Clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment**

Having concluded that the court has jurisdiction under § 3730(d)(4) to award attorney fees and expenses and that defendants were prevailing parties in this action, the court will now analyze the whether the claims were clearly frivolous, clearly vexatious, or brought primarily for

16

the purposes of harassment.  Although not meritorious in hindsight, the court cannot conclude

that relator's conspiracy and other FCA claims against Penn Ship and Fidelity were so unfounded

as to meet the high standard required to award attorney fees and expenses under § 3730(d)(4).

   To award attorney fees and expenses to defendants under § 3730(d)(4), the court must

conclude that Atkinson's conspiracy claim "was clearly frivolous, clearly vexatious, or brought

primarily for purposes of harassment."[12]  The court may award fees and expenses if Atkinson's

suit falls within any of the three enumerated categories, *see United States ex rel. Mikes v. Straus*,

98 F. Supp. 2d 517, 526 (S.D.N.Y. 2000), *aff'd* 274 F.3d at 704-05, although an award of fees

should be reserved for rare and special circumstances, *see Pfingston v. Ronan Eng'g Co.*, 284

F.3d 999, 1006 (9th Cir. 2002).  A district court should review "the entire course of the

litigation" in making this determination.  *United States ex rel. Grynberg*, 389 F.3d at 1059 (citing

*Christiansburg*, 434 U.S. at 421-22).  However, "it is important that a district court resist the

understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff

did not ultimately prevail, his action must have been unreasonable or without foundation."

*Christiansburg*, 434 U.S. at 421-22.

   A claim is clearly frivolous if it is "utterly lacking in legal merit and evidentiary support."

*United States ex rel. J. Cooper & Assocs. v. Bernard Hodes Group, Inc.*, 422 F. Supp. 2d 225,

---

[12] Congress intended this language to reflect the standard under § 1988, where a prevailing defendant is entitled to fees if "a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co.*, 434 U.S. at 422; *see also United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 704 (2d Cir. 2001).  *See generally* 99 Sen. Rep. 345 (discussing that "[t]his standard [in § 3730(d)(4)] reflects that which is found in section 1988 of the Civil Rights Attorneys Fees Awards Act of 1976").  This court will thus use § 1988 precedent as guidance in applying the standard.

238 (D.D.C. 2006). "[T]he term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." *Christiansburg*, 434 U.S. at 421. The Third Circuit approved several factors "in determining whether a plaintiff's unsuccessful civil rights claim was frivolous[,] including whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or the case continued until a trial on the merits, . . . the question in issue was one of first impression requiring judicial resolution, [and] the controversy is based sufficiently upon a real threat of injury to the plaintiff." *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001). "These considerations, however, are merely guidelines, not strict rules; thus determinations regarding frivolity are to be made on a case-by-case basis." *Id.* (internal quotation marks omitted).

Vexatious and harassing claims are those instituted maliciously or without good cause. *See* Black's Law Dictionary 1596 (8th ed. 2004). The existence of a relator's subjective intent distinguishes between vexatious and harassing litigation. While harassment suggests bad faith on the part of the losing party, "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Christiansburg*, 434 U.S. at 421; *Washington Hosp. Ctr. v. Serv. Employees Int'l Union*, 746 F.2d 1503, 1509 (D.C. Cir. 1984). "Evidence of vexatiousness or an intent to harass on the part of a plaintiff includes, but is not limited to . . . the raising of new allegations in an effort to circumvent the arguments in a defendant's motion to dismiss . . . and the inclusion of counts for which the available evidence 'defeats any inference of a false claim.'" *United States ex rel. J. Cooper & Assocs.*, 422 F. Supp. 2d at 238.

Courts have historically awarded attorney fees and expenses when a plaintiff pursued speculative litigation based on personal belief without support in fact. *See United States ex rel. Mikes*, 274 F.3d at 705 (holding that "[s]ince plaintiff's allegations were bereft of any objective factual support, they clearly had no chance of success"); *United States ex rel. Minna Ree Winer Children's Class Trust v. Regions Bank of La.*, No. 94-4085, 1996 WL 264981, at *7 (E.D. La. May 17, 1996) (finding that "[r]elator's action is in reality not based upon the facts at all, but rather, on personal opinion that the great disparity in acquisition and selling price of the property at issue could only be the product of some collusive scheme"); *Hutchinson v. Staton*, 994 F.2d 1076, 1080 (4th Cir. 1993) (finding that "plaintiffs were unable to back their conspiracy theory with anything beyond conjecture and speculation"). Similarly, pursuit of repetitious, unfounded litigation is a hallmark of vexatiousness and results in an award of attorney fees. *See, e.g., Pub. Interest Bounty Hunters v. Bd. of Governors of Fed. Reserve Sys.*, 548 F. Supp. 157, 163 (N.D. Ga. 1982) (finding a *qui tam* action sufficiently vexatious where plaintiff "knew from the previous thirteen lawsuits brought in his individual capacity that this court could not grant the mandamus relief which he sought"); *United States ex rel. Minna Ree Winer Children's Class Trust*, 1996 WL 264981, at *8 (concluding at the end of a third lawsuit that "[s]uch a litigious history is indicative of the ultimate goal—to vex and harass the defendants").

Noting the considerable discretion granted to the court, *see Barnes Found.*, 242 F.3d at 158, the court will now apply these standards to defendants' motions. Penn Ship and Fidelity request attorneys' fees and expenses for their defense of the conspiracy claim that survived the motion to dismiss, and Fidelity also requests its attorneys' fees and expenses spent defending this action since Atkinson filed his first amended complaint.

19

a.    *Conspiracy*[13]

Penn Ship and Fidelity request attorneys' fees and expenses for their defense of the

conspiracy claim.  The court cannot conclude that the conspiracy claim against Penn Ship and

Fidelity involving the trust indenture was clearly frivolous, clearly vexatious, or brought

primarily for the purposes of harassment.  I reach this conclusion based on a number of factors.

First, when Atkinson instituted and pursued this conspiracy claim, it was not clearly

barred by the jurisdictional statute.  The conspiracy claim survived the motion to dismiss in this

court because I held, based on a detailed review of prior case law and the facts of this case, that

Atkinson qualified under the original source exception to the public disclosure jurisdictional bar.

*Atkinson II*, 255 F. Supp. 2d at 379, 382.  On appeal, the Third Circuit, considering the issue one

of first impression, *see Atkinson IV*, 473 F.3d at 521, disagreed that Atkinson did not qualify

under the original source exception under its newly announced "extent of reliance" test, *id.* at

523.  Thus, only as a result of this very case is it now settled law that investigating and

discovering public records not enumerated within § 3730(e)(4)(A) fails to qualify under the

original source exception.  As it was an issue of first impression, the Third Circuit's decision

does not render Atkinson's pursuit of his claim clearly frivolous.

---

[13] Although the Third Circuit's ruling in *Atkinson V* supplanted this court's consideration
of summary judgment in *Atkinson III*, this court may still appropriately consider an award of
attorney fees and expenses incurred during the summary judgment stage.  *See Willy*, 503 U.S. at
138 (holding that "[a] final determination of lack of subject-matter jurisdiction of a case in a
federal court . . . does not automatically wipe out all proceedings had in the district court at a
time when the district court operated under the misapprehension that it had jurisdiction").
Otherwise, a defendant who proceeds through discovery after losing a jurisdictional challenge,
only to have the appellate court later conclude that jurisdiction did not exist because relator's
claim had no jurisdictional basis, is worse off than a defendant who properly loses the
jurisdictional challenge because relator's case has some jurisdictional basis but then wins on
summary judgment.

Second, Atkinson's claim was sufficiently supported in the third amended complaint by facts alleging a conspiracy. This court allowed the conspiracy claim to proceed to discovery because "it would be difficult to allege with a great deal more particularity the contours of a conspiracy." *Atkinson II*, 255 F. Supp. 2d at 409, 410, 413. The decisive facts in this case—the lack of a shared conspiratorial objective between Penn Ship and Fidelity—did not emerge until discovery was completed. *See Atkinson III*, 2004 WL 1686958, at *15; *see also Christiansburg*, 434 U.S. at 421 (requesting that courts forbear from awarding fees where "[d]ecisive facts may not emerge until discovery or trial"). Pursuit of evidence of the alleged conspiracy during discovery was permissible, all issues raised during discovery were addressed by the court at that time, and the ultimate conclusion that he lacked evidence of a meeting of the minds between Penn Ship and Fidelity is not sufficient to award attorney fees and expenses.

Third, the actions of independent agents evidenced the potential meritoriousness of the claim. The government considered the motion to intervene for over two years, delaying the decision on numerous occasions, including the period from April 6, 1995 to September 19, 1997. (*See* Unopposed Mot. by USA for Extension of Time to Determine Whether or Not to Intervene, Apr. 6, 1995, Docket No. 5, and subsequent motions; Notice of Election to Decline Intervention by USA, Sept. 19, 1997, Docket No. 36.) The government's motions suggest that the case was not wholly frivolous or vexatious. Similarly, plaintiff was able to obtain counsel, indicating that his claim was not clearly frivolous. (*See* Appearance, Nov. 12, 1998, Docket No. 55; Order for pro hac vice, Nov. 16, 1999.)

Fourth, Atkinson spent considerable sums pursuing this claim. Provisions of the FCA awarding fees only to prevailing relators discourage knowingly spurious claims with little chance

21

of success. *See* § 3730(d)(1) and (2); *see also Christiansburg*, 434 U.S. at 424 (finding that the fact that "§ 706(k) allows fee awards only to prevailing private plaintiffs should assure that this statutory provision will not in itself operate as an incentive to the bringing of claims that have little chance of success"). In total, Atkinson spent approximately $500,000 of his own money pursuing a claim that ultimately failed. His willingness to expend considerable wealth pursuing the claim evidences its meritorious underpinnings.

The court simply cannot conclude that Atkinson's claim was frivolous, vexatious, or brought primarily for the purpose of harassment. To award attorney fees and expenses in this case would dissuade the type of litigation that Congress has deemed beneficial. *See generally United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir. 1991) (holding that the general intent of the 1986 amendments, which, among other revisions to the FCA, added § 3730(e)(4), was "to encourage persons with first-hand knowledge of fraudulent misconduct to report fraud"); *cf. Christiansburg*, 434 U.S. at 424 (holding that "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII").[14]

---

[14] Many pieces of evidence cited by defendants to prove relator's subjective intent to vex or harass, such as discovery abuses, the formation of Chester Challenge LLC, or the public disclosure of discovery information, are irrelevant to the court's current analysis because they do not relate to Atkinson's pursuit of the *claims* that were before the court. In addition, the results of the multiple government investigations outside of this litigation are not before the court and are inconclusive at best regarding the objective strength of the claims or Atkinson's subjective intention in pursuing them.

22

     *b.*    *Remaining Counts of the Second and Third Amended Complaints*

Fidelity also requests attorneys' fees and expenses it expended in defense of all claims brought against it since the first amended complaint was unsealed and served on Fidelity in 1998. The court cannot conclude that these claims were clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment. The court ultimately dismissed the fifth, tenth, and eleventh counts of the third amended complaint, the only counts other than the conspiracy count that involved Fidelity as a defendant, for lack of jurisdiction under § 3730(e)(4).[15] *See Atkinson II*, 255 F. Supp. 2d at 417. A review of this court's holding at that time reveals that like many cases dismissed on jurisdictional grounds, the claims were not unfounded or without merit. Reviewing the evidence and case law offered by Atkinson, the court needed a technical review to reach these conclusions, *see Atkinson II*, 255 F. Supp. 2d at 387-88, 398. This is hardly the type of clearly frivolous, clearly vexatious, or primarily harassing claim that justifies an award under § 3730(d)(4).[16]

Having concluded that Atkinson's claims were not frivolous, vexatious, or harassing at the time he filed his third amended complaint, the court also concludes that the first and second amended complaints were not used to vex or harass Fidelity. Atkinson pursued his claims through two lawsuits and numerous amended complaints over fifteen years. The length of this

---

[15] For the fifth count, the court concluded that Atkinson was not an original source because his efforts required no specialized knowledge. *Atkinson III*, 255 F. Supp. 2d at 387-88. For the tenth and eleventh counts, the court found that the transaction had been publicly disclosed and that Atkinson did not claim that he was an original source. *Id.* at 398.

[16] In addition, the reverse false claims portion of count one were dismissed under Rule 12(b)(6). Although this court concluded that it is axiomatic that reverse false claims are not cognizable under the FCA, Atkinson produced both factual and legal support for his claim. *Id.* at 414. An award of attorney fees and expenses is similarly not warranted for this claim.

litigation reflects the legal and factual complexity of this case, delays attributable to the government and to both parties, and the unsettled status of the law, including that the applicability of the public disclosure-original source rule was not been fully briefed until after Atkinson filed the third amended complaint, *see Atkinson I*, 2000 U.S. Dist. LEXIS 12081, at *6 n.11. These factors weight against a finding of vexatiousness or harassment.[17] The court finds that it cannot conclude that Atkinson's claims against Fidelity were clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment. The court will thus deny defendants' motions for attorneys' fees and expenses under § 3730(d)(4).

### III.   Conclusion

Defendants assert that they are entitled to attorneys' fees and expenses under § 3730(d)(4). The Third Circuit concluded that this court lacked jurisdiction to adjudicate Atkinson's FCA claims because Atkinson did not qualify as an original source under the public disclosure jurisdictional bar of § 3730(e)(4). The court nonetheless retains jurisdiction over defendants' § 3730(d)(4) motions for attorney fees and expenses because Congress intended to dissuade litigation barred by § 3730(e)(4), because this result maintains the balance between adjudicating the merits of a claim and regulating frivolous lawsuits, and because it is consistent with the exercise of jurisdiction over the collateral issue of Rule 11 sanctions. Under § 3730(e)(4)'s jurisdictional bar, defendants were prevailing parties for purposes of § 3730(d)(4) because the Third Circuit's decision materially altered the legal relationship between relator and defendants. However, the court will not award the requested attorneys' fees and expenses under

---

[17] Also supporting this conclusion are the factors, as discussed above, lending legitimacy to his case—that the government considered intervening for an extended period of time, that Atkinson acquired counsel, and that he expended significant wealth on this litigation.

the discretion granted to it by § 3730(d)(4) because it cannot conclude that Atkinson's claims were clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| ex rel., PAUL E. ATKINSON, | : | CIVIL ACTION |
|    Plaintiff, | : | |
| | : | NO. 94-7316 |
|     v. | : | |
| | : | |
| PENNSYLVANIA SHIPBUILDING CO. and | : | |
| FIRST FIDELITY BANK, N.A., | | |
|    Defendants. | | |

**FILED**

DEC - 3 2007

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### Order

YOHN, J.

And now, this _30_ day of November 2007, upon careful consideration of defendants

Pennsylvania Shipbuilding Co. and First Fidelity Bank, N.A.'s motions for attorneys' fees and

expenses filed pursuant to 31 U.S.C. § 3730(d)(4) (Docket Nos. 236 & 238), plaintiff Paul

Atkinson's opposition to the motions and supporting documentation, defendants' replies, and

plaintiff's sur-reply, it is hereby ORDERED that defendants' motions are DENIED.

William H. Yohn Jr., Judge